## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### Fort Myers Division

RICHARD MILBAUER,                    )
                              )

     Plaintiff,                       )

                              )

v.                                   )   Civil Action No. _____

                              )

UNITED STATES OF AMERICA,            )

                              )

     Defendant.                       )

### COMPLAINT

COMES NOW Plaintiff, by and through his counsel, and for his cause of action against Defendant alleges and avers as follows:

### Jurisdiction and Venue

1.    Plaintiff Richard Milbauer resides at 833 Cape Coral Parkway West, Apartment 6, Cape Coral, Florida 33914.

2.    Defendant United States of America will be served through the United States Attorney General, Department of Justice, 10th and Pennsylvania Avenue, N.W., Washington, D.C. 20530, and through the United States Attorney, Civil Process Clerk, 2110 First Street, Suite 3-137, Ft. Myers, FL 33901.

3.    This action arises under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* This Court is vested with jurisdiction pursuant to 28 U.S. C. § 1346(b). This action also arises under New York law because the negligent acts and omissions of Defendant occurred in New York.

4.    Plaintiff filed his administrative claim with the United States Department of Veterans Affairs (VA) on September 27, 2008. On August 26, 2009, the VA

Regional Counsel denied Plaintiff's claim. On September 30, 2009, Plaintiff filed a request for reconsideration with the VA's Office of General Counsel. On February 8, 2010, the Plaintiff, by counsel, amended his claim to increase the amount of monetary damages sought to $2.5 million. To date, no further action has been taken on the Plaintiff's claim. Plaintiff has consequently elected to file suit in accordance with 28 U.S.C. § 2675.

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1402(b) because Plaintiff resides within the Middle District of Florida.

**General Allegations**

6.      At all times relevant herein, the United States of America owned and operated the Brooklyn VA Medical Center ("Brooklyn VAMC") in Brooklyn, New York.

7.      At all times relevant to this action, the agents, servants, employees, and personnel of the Defendant United States of America were acting within the course and scope of their employment in providing medical care and treatment to Richard Milbauer ("Mr. Milbauer"), a veteran of the United States Armed Forces entitled to such care and treatment.

8.      On September 13, 2005, Mr. Milbauer injured his right shoulder while at work. On September 14, 2005, Mr. Milbauer presented to the Brooklyn VAMC emergency room, complaining of pain. He was given pain killers and a sling and told to return the following day to be seen in the VA's Orthopedic Clinic ("the clinic"). The next day, Mr. Milbauer presented to the clinic, and was again

given ice, pain killers and a sling. Mr. Milbauer returned to work in the construction industry.

9.     On September 20, 2005, Mr. Milbauer returned to the clinic for a follow-up visit. He was examined by Dr. John Sharkey, who recommended an MRI. Mr. Milbauer explained to Dr. Sharkey that he would require an open MRI due to claustrophobia. Neither Dr. Sharkey nor any of the Defendant's other employees ever offered the Plaintiff any alternative imaging study, such as closed MRI with IV sedation. The Brooklyn VAMC did not have the capability to perform an open MRI, but the Plaintiff was entitled to have one performed at another facility at the VA's expense. Mr. Milbauer was told that someone would contact him regarding the procedure to set such an outside appointment.

10.     On September 28, 2005, Mr. Milbauer again presented to the Brooklyn VAMC emergency room after sustaining a new injury to his right shoulder, arm and head while at work. Mr. Milbauer was given pain medication and a sling, and told to return to the clinic on October 4.

11.     When Mr. Milbauer returned to the clinic, Dr. Andrew Steiner informed Mr. Milbauer again that he would need an MRI. Mr. Milbauer was told that he would personally need to obtain the forms, have them filled out, obtain a price from an outside MRI vendor, and then return the forms to the clinic to be signed. Dr. Steiner then told Mr. Milbauer that he would contact someone in the radiology department who would be in touch regarding the forms and the process. A letter was issued by Dr. Steiner allowing Mr. Milbauer to continue working in a restricted capacity.

12.   On October 6, 2005, the radiology department contacted Mr. Milbauer and requested that he call the department to set up an appointment for an MRI. When Mr. Milbauer called, he was told that the radiology department did not set up appointments for outside MRIs. Mr. Milbauer was then told that someone from the orthopedic department would be in contact with him.

13.   Two weeks passed and Mr. Milbauer still had not been contacted by anyone at the Brooklyn VAMC. On November 15, Mr. Milbauer returned to the clinic and spoke to Dr. Sharkey. Dr. Sharkey recommended that Mr. Milbauer contact social services to find out where he could obtain an outside MRI form. Mr. Milbauer went to social services and was told that someone would get back to him. No one from that office did contact the Plaintiff and his further attempts to contact this office were unsuccessful.

14.   For approximately the next seven weeks, Mr. Milbauer made numerous calls to social services and the support staff at "Pod-B" of the Brooklyn VA orthopedic clinic, and was repeatedly told that someone would get back to him, or that they had no knowledge of the procedure required to receive an off-site open MRI.

15.   On February 21, 2006, Mr. Milbauer was seen by his primary care doctor, Asya Perelstein. During this visit, Mr. Milbauer informed Dr. Perelstein that he was still having increasing shoulder pain and was having trouble getting the proper form for an off-site MRI. Dr. Perelstein stated she would look into the matter and see what she could find out.

4

16.    The Plaintiff continued to suffer increasing pain from his injury.  Of necessity, he relied on the Defendant to provide him with needed medical care. Frustrated by the Defendant's failure to provide such care in a timely fashion, Mr. Milbauer returned to the clinic on March 23, 2006.  Dr. Steiner informed him that the process would need to be started over.  Dr. Steiner again sent Mr. Milbauer to social services, where he was informed that social services was not involved in arranging outside appointments.  Social services also told Mr. Milbauer that the doctors and clinic staff knew how to arrange for outside appointments.

17.    On March 28, 2006, Mr. Milbauer returned to the clinic and was finally given form 10-7078 for an outside MRI.  Dr. Alexander Cho signed the form and instructed Mr. Milbauer to take it to an MRI vendor of his choice.  Due to Mr. Milbauer's progressive and increasing pain, Dr. Cho issued a letter indicating that Mr. Milbauer should stop working until "further work-up of his injury."

18.    Mr. Milbauer chose Stand-Up MRI of Staten Island, and received an appointment for April 24, 2006.  Five days before his scheduled appointment, Stand-Up MRI informed Mr. Milbauer that the 10-7078 form was incomplete, improperly executed, and should have come directly from the VA Fee Basis Unit.

19.    On April 25, 2006, Mr. Milbauer returned to the clinic and explained to Dr. Sharkey why his appointment had been cancelled.  Dr. Sharkey responded by telling Mr. Milbauer to contact the Fee Basis Unit to find out the proper procedure.  Mr. Milbauer attempted to contact the Fee Basis Unit on both May 12 and May 26, but received no response.

5

20. On June 13, 2006, Mr. Milbauer returned to the clinic with the original form. Dr. Sharkey called surgical services and eventually spoke to the employee that handled outside appointments. Dr. Greg Khounganian and Dr. Sharkey then completed an additional required memorandum and instructed Mr. Milbauer to take all of the signed forms to surgical services. When Mr. Milbauer submitted the forms to surgical services, he was told that he would receive a call from the Fee Basis Unit within a week or two. In addition, Mr. Milbauer was given a copy of VA New York Harbor Healthcare System Policy #11-41, dated January 2004. This policy sets forth the procedure used by the Brooklyn VA Medical Center to order and/or arrange for medical tests and procedures performed at non-VA institutions. Mr. Milbauer was encouraged to keep a copy of this policy and told to use it the next time he had difficulties related to VA staff ignorance of the policy in question.

21. On June 26, 28, and 29, Mr. Milbauer continually called the Fee Basis Unit, but never received a response. On July 17, Mr. Milbauer filed a formal complaint with the Department of Veterans Affairs using the "Inquiry Routing and Information System" (IRIS).

22. On July 26, 2006, Mr. Milbauer received a response to the complaint he filed with IRIS: "We apologize for the delay in getting back to you and for your inconvenience. Your application has been located. Unfortunately, there have been some process problems, but these have been resolved."

23. On July 31, 2006, Mr. Milbauer finally received his MRI. The MRI results were reviewed by the Brooklyn VAMC on August 8. On review, it was

found that Mr. Milbauer had a massive right rotator cuff tear with retraction. Possible treatment options were discussed with Mr. Milbauer, who was told that his tear may be irreparable.

24.    Mr. Milbauer elected to undergo surgery.  On March 21, 2007, he underwent a right shoulder arthroscopy.  Intraoperatively, it was noted that there was a tremendous amount of inflammatory tissue.  There was early arthritis in both the glenoid and the humeral head.  It was noticed that there was a large supraspinatus tear off of the humeral head, which had retracted beyond the superior edge of the glenoid.  There was no biceps tendon visible, and there was no subscapularis tendon visible.  A subacromial decompression was performed. It was then decided that the rotator cuff tear was too massive for repair and that complete debridement of the subacromial space would be required.   Dr. Sharkey's progress note of March 27, 2007, stated that Mr. Milbauer had sustained an acute rotator cuff tear which had progressed to a very large size.

### Negligence

25.    Plaintiff Richard Milbauer alleges that the agents and employees of the United States of America at the Brooklyn VA Medical Center in Brooklyn, New York, deviated from appropriate standards of medical care in providing medical care and treatment to him in the following respects:

a. Failing to take reasonable steps to diagnose his rotator cuff injury within a reasonable time frame through an outside MRI;

b. Failing to have the appropriate paperwork prepared to authorize the outside MRI for a period of ten months; and

c. Committing other negligent acts or omissions in violation of the applicable standards of medical care.

26.     The aforementioned deviations from the standard of care committed by the agents and employees of the Defendant were the proximate cause of Mr. Milbauer's irreparable and massive rotator cuff tear.

### Damages

27.     Paragraphs 1 through 23 are hereby realleged and incorporated by reference.

28.     As a direct and proximate result of Defendant's negligence, Plaintiff Richard Milbauer has and will continue to incur damages, including but not limited to, the following:

a. Significant physical pain, suffering, and discomfort;

b. Severe emotional distress and mental anguish;

c. Loss of enjoyment of life;

d. Past and future medical bills;

e. Lost income;

f. Economic losses; and

    g.  Other damages.

WHEREFORE, Plaintiff respectfully requests that this Court issue a judgment in his favor against the United States of America awarding monetary damages in an amount deemed appropriate by the Court and such other further relief as is just and equitable under the circumstances.

                Respectfully submitted:


                s/  John D. McChesney
                John D. McChesney
                Trial Counsel
                FSB No. 65931
                Rawls, McNelis & Mitchell, P.C.
                1111 E. Main Street, Suite 1701
                Richmond, VA 23219
                (804) 344-0038
                (804) 782-0133 – Facsimile
                *Counsel for Plaintiff*
                JMcChesney@RawlsMcNelis.com