UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RICHARD S. MILBAUER,

   Plaintiff,

v.             Case No: 2:11-cv-149-FtM-38DNF

UNITED STATES OF AMERICA,

   Defendant.
_____/

# **ORDER[1]**

This matter comes before the Court on Defendant United States of America's Motion to Dismiss (Doc. #42) filed on October 31, 2012. Plaintiff *pro se* filed his Response to Defendant's Motion to Dismiss (Doc. #49) on November 30, 2012. Defendant filed its Reply to Plaintiff's Response to its Motion to Dismiss (Doc. #57) on January 8, 2013. This Court previously issued an Order directing Defendant to file the decision of the administrative hearing officer (Doc. #59) on April 9, 2013. Defendant filed its Response to the Order, (Doc. #60), including the decision of the administrative hearing officer (Doc. #60, Ex. A-D) on April 23, 2013. Accordingly, the Motion is now ripe for review.

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

## PROCEDURAL BACKGROUND

This case was originally filed by Plaintiff Richard Milbauer on March 17, 2011, against Defendant United States of America. (Doc. #1). Defendant filed its Answer and Affirmative Defenses on May 31, 2011. (Doc. #12). On June 2, 2011, Defendant moved the Court to transfer this action from the Middle District of Florida to the Eastern District of New York. (Doc. #14). The Motion was denied on December 8, 2011. (Doc. #18). Defendant filed a Motion for Reconsideration, (Doc. #23), which the Court denied on April 13, 2012. (Doc. #28). On July 16, 2012, and November 2, 2012, Plaintiff's attorneys withdrew from the case and Plaintiff is now proceeding *pro se*. (Doc. #37, 43).

## FACTUAL BACKGROUND

As alleged in the Complaint, Plaintiff is a veteran of the United States Armed Forces and entitled to care at Defendant's Veteran Affairs ("VA") Medical Centers. On September 13, 2005, Plaintiff injured his right shoulder while at work on a construction site. He presented to the Brooklyn VA Medical Center ("Brooklyn VAMC") emergency room, complaining of pain. Plaintiff was given pain killers and a sling and told to return the following day to the VA's Orthopedic Clinic ("the Clinic"). At the Clinic, he again received ice, pain killers, and a sling. Plaintiff then returned to work in the construction industry.

On September 20, 2005, Plaintiff returned to the Clinic for a follow-up visit and was examined by Dr. John Sharkey, who recommended an MRI. Plaintiff explained that he needed an open MRI due to claustrophobia. As the Brooklyn VAMC did not have the

capability to perform an open MRI, Plaintiff was told that someone would contact him regarding the procedure to set up an open MRI at a facility outside of the Brooklyn VAMC.

On September 28, 2005, Plaintiff returned to the Brooklyn VAMC emergency room after sustaining a new injury to his head, right shoulder, and arm. He was given pain medication and a sling and told to return to the Clinic on October 4. When Plaintiff returned, Dr. Andrew Steiner informed him that he would need an MRI. Plaintiff was told that he would personally need to obtain and fill out forms and obtain a price from an outside MRI vendor, then return the forms to the Clinic. Dr. Steiner informed Plaintiff that someone from radiology would contact him regarding the process.

Plaintiff was not contacted, so on November 15, 2005, he returned to the Clinic. Dr. Sharkey recommended that Plaintiff contact social services about obtaining an outside MRI form. At social services, Plaintiff was told that someone would call him, but no one from that office ever contacted Plaintiff.

On February 21, 2006, Plaintiff presented to his primary care doctor, Asya Perelstein, complaining of increasing pain in his right shoulder. On March 23, 2006, Plaintiff returned to the Clinic and was seen by Dr. Steiner. On March 28, 2006, Plaintiff again returned to the Clinic and was given the form for an outside MRI. Dr. Alexander Cho signed the form and instructed Plaintiff to take it to the MRI vendor of his choice. When Plaintiff presented the form to Stand-Up MRI of Staten Island, it was rejected because it should have been sent directly from the VA Fee Basics Unit. Plaintiff attempted to contact the VA Fee Basics Unit, but received no response.

On June 13, 2006, Plaintiff returned to the Clinic with the original form. Dr. Sharkey and Dr. Greg Khounganian completed an additional memorandum and instructed Plaintiff to bring the forms to surgical services. At surgical services, Plaintiff was told that he would be contacted by the Fee Basics Unit within a week or two, and he was given a copy of VA New York Harbor Healthcare System Policy #11-41. Plaintiff did not receive a response from the Fee Basics Unit, and on July 17, 2006, he filed a formal complaint with the Department of Veterans Affairs. He received a response on July 26, 2006, and on July 31, 2006, he received an open MRI at Stand-Up MRI of Staten Island. The results were reviewed on August 8, 2006, revealing a massive rotator cuff tear with retraction. Plaintiff underwent surgery on March 21, 2007, and it was found that the tear was irreparable.

On September 27, 2008, Plaintiff filed an administrative claim with the United States Department of Veterans Affairs. On August 26, 2009, the VA Regional Counsel denied Plaintiff's claim. On September 30, 2009, Plaintiff filed a request for reconsideration with the VA's Office of General Counsel. Plaintiff amended his claim on February 8, 2010, increasing the amount of monetary damages to $2.5 million. On March 7, 2011, Plaintiff's claim was again denied.

On March 17, 2011, Plaintiff filed the instant Complaint against Defendant pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 et. seq., asserting a single claim of negligence. Defendant filed the instant Motion to Dismiss for lack of jurisdiction, arguing that the Complaint actually alleges a veterans' benefits issue, and therefore falls outside the jurisdiction of this Court.

## **DISCUSSION**

In its Motion to Dismiss, Defendant raises a Fed. R. Civ. P. 12(b)(1) challenge to the subject matter jurisdiction of the Court. (Doc. #42). Subject matter jurisdiction relates to the Court's power to adjudicate a case. Morrison v. Nat'l Austl. Bank Ltd., --- U.S. ---, 130 S. Ct. 2869, 2877, 177 L. Ed. 2d 535 (2010); Reed Elsevier, Inc. v. Muchnick, --- U.S. ---, 130 S. Ct. 1237, 1243, 176 L. Ed. 2d 18 (2010). "[A] court must first determine whether it has proper subject matter jurisdiction before addressing the substantive issues." Taylor v. Appleton, 30 F.3d 1365, 1366 (11th Cir. 1994). If jurisdiction is found to be lacking, the Court cannot proceed at all; its sole remaining duty is to state that it lacks jurisdiction and dismiss the case. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998); see also University of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 410 (11th Cir. 1999) ("[O]nce a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue.").

Rule 12(b)(1) motions challenging the subject matter jurisdiction of the court may attack jurisdiction "facially" or "factually." McElmurray v. Consol. Gov't of Augusta-Richmond Cnty., 501 F.3d 1244, 1251 (11th Cir. 2007). A facial attack challenges subject matter jurisdiction based on the allegations in the complaint, and the court takes the allegations in the complaint as true in deciding the motion. Id. Factual attacks challenge subject matter jurisdiction in fact, irrespective of the pleadings. Id. As such, in deciding a factual attack, the court may consider "matters outside the pleadings, such as testimony and affidavits." Id. In deciding a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material

facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990). In this case, Defendant raises a factual attack on the Court's subject matter jurisdiction.

Defendant submits that the Court lacks subject matter jurisdiction because Plaintiff's claim is precluded by the Veterans Judicial Review Act ("VJRA"), 102 Stat. 4105 (codified, as amended, in various sections of 38 U.S.C. (2006 ed. and Supp. III)). In response, Plaintiff maintains that his claim is not barred by the VJRA and that this Court has original jurisdiction over his claim pursuant to the Federal Tort Claims Act ("FTCA") and 28 U.S.C. § 1346(b).

In determining the court's jurisdiction over a claim, "[i]t is the substance of the claim and not the language used in stating it which controls." Reed v. U.S. Postal Serv., 288 F. App'x 638, 640 (11th Cir. 2008). In this case, the Complaint alleges that:

> [T]he agents and employees of the United States of America at the Brooklyn VA Medical Center . . . deviated from appropriate standards of medical care in providing medical care and treatment to [Plaintiff] in the following respects:
>     a. Failing to take reasonable steps to diagnose his rotator cuff injury within a reasonable time frame through an outside MRI;
>     b. Failing to have the appropriate paperwork prepared to authorize the outside MRI for a period of ten months; and
>     c. Committing other negligent acts or omissions in violation of the applicable standards of medical care.

(Doc. #1, ¶25). Plaintiff alleges that this failure to take action was the proximate cause of his irreparable rotator cuff tear. (Id. at ¶26).

Plaintiff argues in his Response to Defendant's Motion to Dismiss that Defendant's agents and employees at the Brooklyn VAMC deviated from the standard of care in failing to offer Plaintiff any alternative diagnostic procedures when they learned of Plaintiff's difficulty in obtaining pre-authorization for an outside MRI. Plaintiff

argues that this standard of care is derived from the New York Harbor Healthcare System Mandatory Training Manual and the Healthcare System Policy No. 11-41 that he was given at the Clinic.  Plaintiff first raised this argument in his Response to Defendant's Motion to Dismiss.  However, if Plaintiff wishes to raise this argument under the FTCA in federal district court, he must have first exhausted his administrative remedies with respect to that claim.  See 28 U.S.C. § 2675(a); see also Gibbs v. United States, No. 12-13252, 2013 WL 1668244, at *3 (11th Cir. Apr. 17, 2013) ("If a party files a lawsuit in a district court before filing an administrative claim and exhausting the statutory administrative remedies, the suit is premature and the district court lacks subject matter jurisdiction over the action.").  The SF-95 that Plaintiff filed in his administrative claim states the basis of his claim as:

> Failure of the Brooklyn VA Hospital and medical staff to provide an outside MRI of claimant's right shoulder in a timely manner.  The MRI was recommended/ordered by the doctor's [sic] of the Orthopedic Sports Clinic on September 20, 2005.  Due to the staff not knowing how to arrange an outside MRI, the placing of the burden of paperwork on the claimant and the claimant finally having to file a complaint, caused further damage to claimant's injury. . . .  On 09/02/2008, during continued treatment at the Orthopedic clinic, claimant was informed that had an MRI been performed with-in a 30 day period from the injury, the rotator cuff tear would have been fixable.

(Doc. #60, Ex. A § 8).  As Defendant points out, Plaintiff mentioned nowhere in his administrative claim that Defendant failed to provide alternative diagnostic procedures or that Policy No. 11-41 provided the appropriate standard of care for Defendant.  The Court agrees.  Because Plaintiff did not exhaust his administrative remedies with respect to this argument, the Court cannot properly consider it in deciding the instant Motion to Dismiss.  See Turner v. United States, 514 F.3d 1194, 1200 (11th Cir. 2008).

Properly considered are the allegations in the Complaint concerning the delay in receiving pre-authorization for an outside MRI.

To determine whether this Court has subject matter jurisdiction over Plaintiff's claim, it must evaluate whether the Complaint in essence alleges medical malpractice or a veterans' benefits claim.  To state a claim for medical malpractice, the plaintiff must allege "the standard of care owed by the defendant, the defendant's breach of the standard of care, and that the said breach proximately caused the damages claimed." Turner, 514 F.3d at 1203.  Veterans' benefits claims are governed by the VJRA. Generally, the VJRA made changes to the existing structure of administrative review of veterans' benefits decisions.  Bates v. Nicholson, 398 F.3d 1355, 1363 (Fed. Cir. 2005). The VJRA created the Court of Appeals for Veterans Claims, an Article I tribunal, and authorized that court to review decisions of the Board of Veterans' Appeals adverse to veterans.  Henderson ex rel. Henderson v. Shinseki, --- U.S. ---, 131 S. Ct. 1197, 1201, 179 L. Ed. 2d 159 (2011).  Decisions of the Court of Appeals for Veterans Claims may be reviewed in the United States Court of Appeals for the Federal Circuit, which decisions may in turn, be reviewed by the Supreme Court of the United States.  Id.; see also 38 U.S.C. § 7292.  The VJRA specifically precludes judicial review in Article III courts of VA decisions affecting the provision of veterans' benefits.  See 38 U.S.C. § 511(a).  The statute provides in relevant part:

> The Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans. Subject to subsection (b), the decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any other court, whether by an action in the nature of mandamus or otherwise.

Id.  Thus, FTCA claims may not be brought in federal district court if they affect the VA's "provision of benefits." Thomas v. Principi, 394 F.3d 970, 973-74 (D.C. Cir. 2005); see also Jones v. United States, No. 4:12CV00124 ERW, 2012 WL 3095544, *5 (E.D. Mo. July 30, 2012) ("federal district courts may not adjudicate claims that require the court to determine whether the VA properly handled a veteran's request for benefits"); Bell v. United States, No. 1:12-cv-75-MHT-WC, 2012 WL 1599272, *2 (M.D. Ala. Apr. 13, 2012); Kumnick v. United States, No. 8:05-CV-01511-JDW-MAP, 2007 WL 4614771, *2 (M.D. Fla. Dec. 31, 2007); Williams v. United States, 932 F. Supp. 357, 362 (D.D.C. 1996).  Courts have interpreted "provision of benefits" in the VJRA to include claims relating to medical expense reimbursement for medical care provided to a veteran at a non-VA facility.  Thomas, 394 F.3d at 974-75 ("Because adjudicating these allegations—failure to 'render appropriate medical services' and 'denial of . . . necessary medical care treatment'—would require the district court 'to determine first whether the VA acted properly' in providing [plaintiff] benefits, these claims are barred by section 511."); Williams, 932 F. Supp. at 362 (citing Emch v. United States, 630 F.2d 523, 528 (7th Cir. 1980)) (holding claims for the VA's responsibility to pay for plaintiff's medical care by an outside provider constitute claims for benefits determinations and precludes jurisdiction in federal district court).

     Plaintiff argues that his claim is not one for provision of benefits because he alleges that his MRI was delayed, not that he was denied benefits.  In provision of veterans' benefits cases, however, "[t]here is no meaningful legal difference between a delay of benefits and an outright denial of benefits." Mehrkens v. Blank, 556 F.3d 865, 870 (8th Cir. 2009).  In Mehrkens, the plaintiff filed a claim under the FTCA for medical

9

malpractice and negligence, alleging that VA physicians caused treatment of his PTSD to be delayed. Id. at 867. The court in that case found that although Mehrkens couched his claims in constitutional and tort law, he was essentially challenging a decision affecting his benefits, so the district court's jurisdiction was preempted by the VJRA. Id. at 868. Similarly, in this case, Plaintiff's allegations, though couched in the language of tort law, essentially present a claim relating to veterans' benefits. The Complaint does not allege that the agents and employees of Defendant at the Brooklyn VAMC deviated from the standard of care in providing medical treatment to Plaintiff; rather, the crux of the Complaint lies in Plaintiff's allegations that he did not receive the outside MRI in a reasonable time because the process of obtaining pre-authorization for the VA's payment for the MRI was prolonged and deficient. His grievance is with the VA's benefits procedure, not with the medical treatment he received. In fact, two doctors recommended an MRI immediately after Plaintiff sustained his injuries. Plaintiff could have received the recommended outside MRI at his own expense at any time. Plaintiff's claim is that it was the process of obtaining authorization for the VA to pay for the MRI that caused the delay Plaintiff complains of, not medical malpractice.

Thus, despite Plaintiff's contention that his claim sounds in tort law, he essentially presents a claim for delay of veterans' benefits. Consequently, the Court lacks subject matter jurisdiction and must dismiss this case.

Accordingly, it is now

**ORDERED:**

(1) Defendant United States of America's Motion to Dismiss (Doc. #42) is **GRANTED**. This case is **DISMISSED without prejudice** for lack of subject matter jurisdiction.

(2) The Clerk of Court shall enter judgment accordingly, terminate any previously scheduled deadlines and pending motions, and **CLOSE the file**.

**DONE** and **ORDERED** in Fort Myers, Florida this 22nd day of July, 2013.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record